32637. HUMBER *et al.*, next friend, *v.* GARRARD, guardian.

Decided October 7, 1949.

*George D. Lawrence, D. D. Veal,* for plaintiffs in error.
*W. W. Walker,* contra.

Sutton, C. J. This proceeding was instituted by Dr. J. I. Garrard, guardian of Robert C. Humber, in Putnam Superior Court, for authority to sell land of his ward for the purpose of reinvesting the proceeds. In the verified petition it was alleged that: The ward owns 1314 acres of certain described land in Putnam County. The annual income from the land is $630.61, and the annual expense is $200. The property is deteriorating in value. The guardian has an offer of $22,332.33 for the property from Interstate Land and Investment Company of Macon, which he believes is more than the land would bring at a public sale. The ward is hopelessly insane and confined to the mental institution in Milledgeville, and has no close relatives

in this State to look after the property, and the guardian is of the opinion that it is to the best interest of the ward's estate that the land be sold as outlined. The guardian desires to invest the proceeds in United States Government bonds. The prayer is "for an order to sell said property at private sale and upon the terms heretofore stated."

Miss Ceres W. Humber and Mrs. Marion Humber Johnson, of Washington, D. C., filed objections to the application. In their objections it was alleged that: The objectors are sisters of the ward, and object in their own behalf and other sisters of the ward, especially Miss Frances Humber, of Washington, D. C. The net income from the farm land, $430.61, would nearly, if not fully, equal the income from low-interest United States Government bonds. The land is highly productive of timber and is now well stocked with sawmill timber and growing timber which will mature as time passes, so that, with rentals, a greater income will be derived from the land itself than from government bonds. The timber resources of the land are the chief reason for the offer of Interstate Land and Investment Company to buy the land. The land has been in the Humber and related families for many years, and their brother, Charles Humber, now deceased, told them to never allow the land to be sold. The ward, an inmate of the State hospital, is there given all necessities, and does not need much assistance from his guardian. The income from interest on funds already in the hands of the guardian will be sufficient to provide the ward with all the comforts or additional assistance that he might need. The ward could reap no advantage from the sale of the land, whereas the land itself would bring to the ultimate distributees a greater cash value, as well as sentimental value, than low-interest government bonds. They represent three-fifths interest as ultimate distributees of the ward's estate, the other two ultimate distributees being Mrs. Charles I. Humber, widow and executrix of the estate of their deceased brother, of San Antonio, Texas, and Mrs. Petrona Humber Hean, a sister, of Harrisburg, Pennsylvania. If the guardian has too great a burden on him, he can resign and have a successor appointed to take charge of the estate and preserve it for the utimate distributees. The guardian is under a $500 bond only, and made a previous

attempt to sell the land by application to Putnam Court of Ordinary, and obtained an order from that court in 1945 or 1946, but no sale was ever consummated, apparently because he discovered that the order was void. There is no one who needs the income now and no one to whom the income can be distributed, except the ward, whose needs are limited, and which are already provided from interest on cash and bonds worth more than $20,000 already in the guardian's hands. The timber value of the land will increase greatly. Timber was worth $3 per thousand feet on the stump in 1919, a year of inflationary conditions, and $25 per thousand feet on the stump in 1945 and 1946. The truth of their objections was verified by one of their attorneys.

A hearing was held before the judge of the superior court in chambers, the evidence for all parties being offered in affidavit form. S. I. Walker testified that he had been familiar with land valuations in Putnam County for more than 20 years, and that in his opinion a price of $17.75 per acre for the land involved is an excellent sale price, and if he were in the market for timber land he would not pay this price for the land. M. S. Shivers testified that he had lived in Putnam County for more than 40 years and had been a real estate agent in the county for a long number of years and was familiar with land valuations, and based on his experience the price of $17.75 per acre for the lands involved is a fair market value. John L. Adams, a resident of Eatonton, Putnam County, testified that he is the guardian ad litem and a real estate agent familiar with real estate values in Putnam County for more than 30 years; that $17.75 per acre is a fair market value for the lands; that Dr. J. I. Garrard is the last relative interested in the welfare of the ward in this State who is competent; that one sister of the ward is insane and the other three sisters are nonresidents; that the only brother is deceased and his widow and two minor children live in Texas; that timber thieves have always been prevalent in the county, especially on land with no one to look after it; that the sale as outlined in the petition is fair as to sale price and most advisable under the circumstances of ownership, and he recommends and assents to the sale and the terms thereof. Mrs. S. A. Dance testified that she is the tax receiver of Putnam County and that lands of the ward are assessed at $5 per acre. Dr.

Garrard, the guardian, testified in regard to the ward's family to the same effect, as did Adams, the guardian ad litem; that he is the last surviving uncle of the ward and there are no living aunts; that he is a person of age and cannot expect to be here many years; that the price offered for the lands is fair and represents the highest bid received from four or five reputable concerns; that he sold the saw timber in 1945 and nothing is left on the land but pulpwood and scattered saw timber; that due to the condition of ownership he deems it advisable to sell the land; that the income from the land for 1949 will be three bales of cotton, worth approximately $450, less $200 expenses; and that this is the probable estimate of future income, or it may be greater than the future income. The above, together with the verified petition, constituted the entire evidence of the applicant. D. D. Veal, one of the attorneys for the objectors, testified that the facts shown in the objections were true; that he is familiar with timber prices and prospective income from the land involved, and that in his opinion it would not be to the best interest of the ward to sell the land and reinvest the proceeds in low-interest government bonds. The objectors had no other evidence.

At the conclusion of the evidence the guardian offered an amendment to the application, which was allowed without objection and ordered filed as a part of the record. This amendment set out that the purchase price offered for the land was $22,332.33, and Interstate Land and Investment Company is to pay for it as follows: $100 already paid as a binder; $13,-306.85 upon delivery of the deed; the balance in two equal instalments of $4,962.74, payable January 1, 1950, and January 1, 1951, with interest after date of maturity, the unpaid balance to be secured by a security deed and notes.

The trial judge held that it appeared "by evidence other than the verified petition that the said sale for reinvestment would be advantageous to the estate of the said ward." · His order provided for the sale of the land under the terms shown in the application and for the investment of the proceeds in United States Government bonds. The objectors excepted, and carried the case to the Supreme Court, and that court transferred the case to this court. *Humber* v. *Garrard,* 205 *Ga.* 357 (53 S. E. 2d, 748).

The sole issue presented by the assignments of error is whether or not the judgment of the trial court is contrary to law, as being without evidence to support the same and contrary to the evidence, and as constituting an abuse of discretion.

It is provided in the Code (Ann. Supp.), § 49-203, that by order, in term time or vacation, of the judge of the superior court of the county of the guardian's appointment, any guardian may sell the whole or any part of the ward's estate for reinvestment, upon such terms and at such time and place as said judge may order. The form of the procedure is set forth in detail in the Code (Ann. Supp.), § 49-204, which also provides that, "the judge, before granting the application, shall carefully examine into the matter, and satisfy himself by evidence other than the verified petition that said order to sell and reinvest should be granted."

The evidence for the applicant, "other than the verified petition," clearly shows wherein the sale of the land for reinvestment of the proceeds would be advantageous to the ward's estate, whereas the objectors only show that in their opinion, and in the opinion of their attorney, the sale of the land would not be advantageous to the ward's estate, and that the objectors, as probable ultimate distributees of the estate, believe that the land would be of greater actual value to them than the proceeds from a sale of the land, and that the land is of sentimental value to them.

Under the pleadings and the evidence, the trial judge, in the exercise of the discretion vested in him by the law applicable thereto, was authorized to determine that the sale of the land for the ward for reinvestment of the proceeds would be advantageous to the ward's estate, and to order the sale of the land and the reinvestment of the proceeds therefrom in accordance with the terms of the guardian's application.

*Judgment affirmed. Felton and Worrill, JJ., concur.*